[No. 26124. Department One. September 16, 1936.]

ALICE F. BERGMAN, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*[1]

*Ralph E. Foley, A. O. Colburn,* and *Harvey Erickson,* for appellant.

*S. Edelstein,* for respondent.

STEINERT, J.—This is an action to quiet title to community real estate against the cloud of two judgments for costs which the state had previously obtained in a

[1] Reported in 60 P. (2d) 699.

criminal prosecution of respondent's husband. Trial before the court, without a jury, resulted in a decree removing the cloud and quieting the title. The state has appealed.

The facts are not in dispute. In so far as it is necessary to state them for the purpose of presenting the law question involved, they are as follows:

At all times herein mentioned, respondent and her husband, Charles B. Bergman, owned and held as community property, and occupied as a home, a certain piece of real estate described as a part of tract 170 of Opportunity in Spokane county. They also owned and conducted a furrier business in the city of Spokane.

On February 20, 1932, Charles B. Bergman, the husband, was convicted, in Spokane county, of the crime of arson in the second degree. The information upon which he was convicted charged that he had feloniously set on fire and burned the store building in which the furrier business was conducted.

The judgment of conviction awarded costs to the state in the sum of $273. On appeal to this court, that judgment was affirmed, *State v. Bergman,* 171 Wash. 67, 17 P. (2d) 604, and, thereafter, the state was awarded an additional judgment for costs in the sum of $24.

There is no contention or suggestion in this case that the respondent in any way participated in the crime or had any prior knowledge that it was to be committed.

The state subsequently procured the issuance of an execution directing the sheriff to seize property to satisfy the judgments for costs. Thereupon, respondent brought this action to prevent a levy of the execution upon the community real estate above described.

The sole question upon this appeal is whether community property may be subjected to the satisfac-

tion of a judgment for costs rendered in favor of the state in a criminal action against the husband for arson of property belonging to the community.

We have found but one case that bears any direct similarity to this. In *Villescas v. Arizona Copper Co.,* 20 Ariz. 268, 179 Pac. 963, one of the questions involved was whether community property could be levied upon and sold under execution to satisfy a judgment against the husband where the judgment was based upon a fine assessed against him in a criminal action. It appears, from a reference in the opinion to counsel's argument, that the crime in that case was not committed in connection with the management of the community property. According to a statute of Arizona, the community property of the husband and wife is liable for the *community* debts contracted by the husband during marriage, except in such cases as are specifically excepted by law. The law of the state of Washington is to the same effect as the statute of Arizona. *Bird v. Steele,* 74 Wash. 68, 132 Pac. 724.

In reaching the conclusion that community property could be held liable to satisfy a separate judgment against the husband, the Arizona court interpreted the above statute in the light of what it termed the general rule, that community property is liable for the *husband's debts.* The court, however, recognized and stated that this general rule did not obtain in Washington, and such is the fact. In this state, it is well settled that a separate debt of the husband is not an obligation against, or chargeable upon, the property of the marital community of which he is a member. *Curtis v. Hickenbottom,* 158 Wash. 198, 290 Pac. 822; *Auernheimer v. Gardner,* 177 Wash. 158, 31 P. (2d) 515.

Were it not for the fact that the fundamental principle upon which the *Villescas* case is based is not ac-

cepted in this state, that case would undoubtedly be most forceful as a guiding precedent here, for if community property may be seized to satisfy the amount of a *fine* against the husband for an offense that had no connection with the management of the community property, there would be all the more reason for holding the community liable for *costs* arising out of a prosecution of the husband for an offense that had at least the semblance of a connection with the community business.

A fine is a sum of money exacted, as a pecuniary punishment, from a person guilty of an offense, while costs are but statutory allowances to a party for his expenses incurred in an action. The former is, in its nature at least, a penalty, while the latter approaches more nearly a civil debt. Hence, if the marital community be liable for that which is akin to a penalty, there is at least equal reason for its liability for a civil obligation.

But, since, in this state, the community property may not be held for the debts of the husband, the Arizona case loses its force as a precedent here. It might even be argued that, if the Arizona court had adopted our rule of nonliability of the marital community for the separate debts of the husband, its conclusion in that case would have been different.

Having no direct precedent, we must turn elsewhere for guidance. The closest analogy to the problem before us lies in the field of torts. In a general way, it may be said that a crime is an offense against the public, while a tort is a private injury. The distinguishing feature, however, between a crime and a tort is in the manner in which they are respectively pursued. An offense which amounts to a crime is pursued by the sovereign; an offense which amounts only to a civil injury is pursued by the injured party. In

many instances, however, the same act constitutes both a crime and a tort, and the wrong is both to the public and to an individual. In this case, the act committed possessed a dual nature. It was a crime against the state, and it was also a wrong against the owner of the building that was burned.

There is an additional circumstance that should be taken into consideration in this case and upon which appellant confidently relies. Upon the trial, appellant offered to prove that, at the time of the fire, Charles B. Bergman carried heavy insurance on the stock of goods in the building, and that he had endeavored to collect the proceeds of the insurance. The purpose of the offer was to show that the arson arose out of acts committed by Charles B. Bergman in the performance of community business. While the offer was rejected by the court, we shall nevertheless, for the purposes of this case, treat the matter as though the evidence had been admitted.

It is now the settled law of this state that, if the tortious act of the husband be committed in the management of community property or for the benefit of the marital community, such community is thereby rendered liable for the act. *DePhillips v. Neslin,* 139 Wash. 51, 245 Pac. 749; *Wimmer v. Nicholson,* 151 Wash. 199, 275 Pac. 699; *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152; *Exeter Co. v. Holland Corp.* (on rehearing), 172 Wash. 323, 341, 354, 20 P. (2d) 1, 23 P. (2d) 864; *O'Malley & Co. v. Lewis,* 176 Wash. 194, 28 P. (2d) 283. See, also, *McGregor v. Johnson,* 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022; *Milne v. Kane,* 64 Wash. 254, 116 Pac. 659, Ann. Cas. 1913A, 318, 36 L. R. A. (N. S.) 88; *Kangley v. Rogers,* 85 Wash. 250, 147 Pac. 898; *Geissler v. Geissler,* 96 Wash. 150, 164 Pac. 746, 166 Pac. 1119; *Hendrickson v. Smith,* 111 Wash. 82, 189 Pac. 550.

But this rule is not based upon the mere fact of marital relationship. It is founded on the doctrine of *respondeat superior.* Under that doctrine, unless, in a given instance, it can be said that the husband was acting as the agent of the marital community, the community is not liable. *Day v. Henry,* 81 Wash. 61, 142 Pac. 439; *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Olive Co. v. Meek,* 103 Wash. 467, 175 Pac. 33.

Now, applying these principles to the case before us, we are convinced that, although Charles B. Bergman may have been the statutory agent of the marital community in the conduct of the furrier business, his tortious act was not committed *within the management* of that business, nor for the benefit of the marital community. On the contrary, his act was destructive of the community business and could entail nothing but loss to the marital community. In committing the offense, he was acting entirely outside of, and beyond, the scope of his authority, whether express or implied.

The fact that he may have had in mind the ulterior motive of obtaining the insurance money does not differentiate the situation. He might, or might not, have been successful in that venture. In this instance, he evidently was not. But wholly aside from that, had he been successful in the venture to the extent of obtaining the insurance money, the result would not have been due to the commission of the offense charged, for that, of itself, would have defeated the policy. To obtain the proceeds of insurance, he would have had to commit another, and wholly distinct, offense or wrong, either perjury or else fraud. That offense or wrong would have been against the insurance company, not against the owner of the building that was burned.

Had the insurance company paid the policy and then, upon discovery of the fraud, brought suit against the

husband and the marital community, to recover the money paid, a question with which we are not here concerned would have been presented. The question here is whether the crime that was committed was an act in the performance of the community business or for the benefit of the community. We hold that it was not.

If we consider the act of Bergman in its aspect of a crime, or an offense against the public, for which he alone could be, and was, prosecuted and convicted, the judgment, both as to the penalty and as to its incident, the costs, operated upon him and him alone. If the costs be considered as a debt, or civil obligation, it was his debt, not that of the marital community. It arose out of a criminal prosecution in which the marital community was not legally concerned, and for the results of which it was not legally liable.

The judgment is affirmed.

MILLARD, C. J., TOLMAN, GERAGHTY, and MITCHELL, JJ., concur.